IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| In re Osage Water Company, ) | | |
|         Debtor ) | Case No. 17-42759 | |
| ) | Chapter 11 | |

| | | |
|---|---|---|
| Gregory D. Williams, ) | | |
|         Plaintiff, ) | | |
| ) | | |
| vs. ) | Adv. Proc. No. 17-02010 | |
| ) | | |
| Hancock Construction Co., et al., ) | | |
|         Defendants. ) | | |

**MEMORANDUM OPINION**

This adversary proceeding comes before the Court on the Motion for Partial Summary Judgment filed by the Chapter 11 Trustee (the "Trustee's Summary Judgment Motion") and the Counter-Motion for Partial Summary Judgment filed by Gregory D. Williams ("Williams' Summary Judgment Motion"). The Plaintiff seeks a declaratory judgment to determine the extent, validity, and priority of several judgment liens, claims and interests in the real property of Osage Water Company (the "Debtor"). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the Trustee's Summary Judgment Motion and grants Williams' Summary Judgment Motion in part.

    I.    FACTUAL BACKGROUND

1

Few, if any, material facts are in dispute. They are derived from the Statement of Uncontroverted Material Facts set forth in the Trustee's Summary Judgment Motion, and were admitted, in large part, by the parties.[1]

The Debtor, a Missouri corporation, owns, operates and controls property in the distribution and sale of water to residents of Camden County, Missouri, for gain. This includes pipes, pumps, structures, appliances and other real and personal property in connection with the collection, carriage, treatment and disposal of sewage (collectively, the "Water Systems"). The Water Systems are essential to the company's business, and are held for the benefit of the public. The Debtor also owns non-operational water supply and sewer systems located at Osage Beach Parkway. The Debtor originally provided these services under the authority of the Missouri Public Service Commission (the "PSC"), and was formed by three principals: David Hancock, Gregory Williams and Pat Mitchell.

On or about June 1, 2001, the Circuit Court of Camden County, Missouri (the "State Court") entered a judgment incorporating a settlement agreement between Harbour Bay Development, LLC ("Harbour Bay") and the Debtor (the "Harbour Bay Judgment"). Roelofsz Enterprises, Inc. ("Roelofsz") is the surviving member by merger, holding the interest, if any, in the Harbour Bay Judgment.

On or about September 3, 2002, Hancock Construction Company ("Hancock") obtained a default judgment against the Debtor in the amount of $215.640.39 in the State Court (the "Hancock Judgment"). Hancock filed a motion to revive the Hancock Judgment on October 14, 2014, and a hearing was subsequently held. On November 3, 2017, after the Debtor filed bankruptcy, the State

---

[1] Williams and Hancock did not deny the facts presented by the Trustee, but included additional facts in their respective responses. Mitchell denied certain facts presented in the Williams Summary Judgment Motion, but his denial does not affect the Court's analysis or the outcome of this case.

2

Court entered an order reviving the Hancock Judgment. Hancock did not obtain relief from the automatic stay prior to the entry of the Revival Order.

On or about August 3, 2004, Water Laboratory, Inc. ("Water Lab") obtained a default judgment against the Debtor in the amount of $177,847.90 (the "Water Lab Judgment"). Jackson Engineering, Inc. ("Jackson Engineering") also obtained a default judgment against the Debtor on that same date in the amount of $112,015.18 in the State Court (the "Jackson Judgment"). On October 9, 2009, the State Court entered an order reviving the Water Lab Judgment, and another reviving the Jackson Judgment. No further revival orders were requested for either. William "Pat" Mitchell claims to be the assignee of the Water Lab and Jackson Judgments.[2]

Due to financial and mismanagement concerns in 2002, the PSC recommended the appointment of a receiver to take control and responsibility of the Debtor. A receiver was appointed in 2005, and all of the Debtor's assets were transferred to him at that time.

In 2015, Williams obtained a judgment against the Debtor in the State Court in the amount of $500,000 for attorney's fees (the "Williams Judgment").

In 2016, Summit Investment Co., LLC ("Summit") obtained a judgment against the Debtor in the amount of $1,041,806 in the State Court (the "Summit Judgment"). Hancock, Water Lab, Jackson Engineering, Williams and Roelofsz will be referred collectively as the "Judgment Holders."

The Debtor filed its Chapter 11 petition on October 11, 2017.

II.     PROCEDURAL BACKGROUND

---

[2] While there was some dispute as to the existence of the assignment to Mitchell, that fact is not material to the Court's holding here.

The purpose of this adversary proceeding is to determine the extent, validity and priority of the competing liens described above. Two issues arise in this context: 1) whether the liens have expired, and 2) whether they can attach to the Debtor's property.

The Trustee asserts that as a matter of law, judgment liens cannot attach to property owned by quasi-public corporations, like the Debtor, and used for public benefit. The Trustee's alternative argument is that even if judgment liens could attach, the Judgment Holders do not have liens because they expired prepetition. With respect to Hancock's Judgment, the Trustee makes the additional argument that the Hancock revival order is void *ab initio* since it was entered by the State Court in violation of the automatic stay.

Hancock takes the position that relief from stay was not required before entry of the revival order because of the exception provided in §362(b)(3) for acts to perfect, maintain or continue the perfection of an interest in property. Hancock also contends that payment made to the Trustee had the effect of extending its lien for an additional ten years beyond the date of the payment.

Williams agrees with the Trustee that the other Judgment Holders' liens expired pre-petition, but disagrees that the Debtor is a quasi-public corporation whose property is exempt from lien attachment and execution. He asserts that he has a valid first-priority judgment lien on the Debtor's assets.

In addition to the lien expiration and attachment issues, the Court will address the request in Mitchell's counterclaim to review the Williams Judgment. Mitchell asserts that most of the attorney's fees Williams was awarded are invalid, and furthermore, that Mitchell was deprived of his rights by not being named a party to the suit that resulted in that judgment. Williams responds that this Court is prevented from reviewing his judgment because of the Full Faith and Credit Act and the *Rooker-Feldman* doctrine.

III.    SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056, applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

In this case, the parties have admitted in their responses that there are no genuine issues of material facts as they were presented by the Trustee. The Trustee has met her burden of showing that under Missouri law, the Debtor is a quasi-public corporation that is not subject to lien attachment and execution. The Trustee has also shown that the Judgment Holders' respective liens expired prepetition. Summary judgment in the Trustee's favor is therefore granted. Additionally, Williams has met his burden of showing that, as a matter of law, this Court's review of his state court judgment is impermissible. Thus, Williams' Summary Judgment Motion will be granted, in part, as well.[3]

IV.    LEGAL ANALYSIS

A. Validity of Liens

---

[3] Besides seeking summary judgment on Mitchell's counterclaim requesting a review of Williams' Judgment, Williams seeks partial summary judgment that he has a valid lien on the Debtor's assets with priority over any other judgment lien. This Court grants summary judgment only as to Mitchell's counterclaim.

5

1. <u>In General</u>

The determination of the validity of liens is governed by state law. Under Missouri law, a judgment lien continues for ten years from the date it was rendered. Mo. Rev. Stat. §511.360. The plaintiff or his representative may sue out a scire facias to revive a judgment and lien within ten years from the rendition of the judgment pursuant to Mo. Rev. Stat. §511.370. Upon the revival of a judgment lien, the lien continues for an additional three years, and may be revived from time to time as necessary. Mo. Rev. Stat. §511.430.

2. <u>Specific Liens</u>

The Harbour Bay Judgment was entered on June 1, 2001. It was never revived. Therefore, it expired in June 2011.

The Jackson and Water Lab Judgments were entered on August 3, 2004. They were revived on or about October 9, 2009, but no additional revival orders were entered since then. Therefore, any purported liens related to the Jackson and Water Lab Judgments expired in 2012.[4]

The Hancock Judgment was entered on September 3, 2002. Therefore, any purported lien would have expired in September of 2012. Hancock nevertheless filed a motion to revive the Hancock Judgment on or about October 14, 2014, and a revival order was entered on November 3, 2017, approximately one month after the Petition Date. Because the motion for revival was filed after the judgment had expired, it follows that any resulting revival would not be effective.

Hancock makes several arguments to challenge the Trustee's position that its judgment lien expired in September of 2012. It asserts that upon revival, judgment liens in Missouri are renewed for a period of ten years rather than three. Relying on *Leung v. Tuen Fu,* 241 S.W. 3d 838 (Mo. Ct. App. W.D. 2007), Hancock contends that Chapter 511 of the Missouri statutes should be read

---

[4]Mitchell himself admits in his Action to Review State Court Judgments that the Jackson and Water Lab Judgments are not secured.

6

"in harmony" with §516.350. The statutory provisions that are analyzed in *Leung*, however, are related to the enforcement of a foreign judgment, which is not an issue in this case.

In general, judgments are presumed satisfied and paid after the expiration of ten years from the latest of 1) the date of the judgment, 2) the date of the revival of the judgment, or 3) the date the last payment made on the judgment was entered on the record. Mo. Rev. Stat. §516.350.1. Confusion as to the period for which a lien is revived arises from misconstruing §516.350. That provision relates to the enforceability of a judgment and when it is deemed satisfied, not the duration of the judgment lien. As the court explained in *Goddard v. Delaney*, 80 S.W. 886 (Mo. 1904):

> The natural meaning of that language is that the process may be repeated as often as may be necessary to keep the judgment alive and its lien in force. The words 'continued for another period of three years' refer to the lien only, not to the judgment. The life of the judgment is 10 years; the life of the lien 3 years. The judgment is revived; the lien continued. Therefore, when the statute says the judgment is revived and the lien continued, it means that a new life of 10 years is given to the one and of 3 years to the other….

*Id.* at 889. Missouri law is clear that revival extends the judgment lien for an additional three years, not ten.

Hancock also argues that the original lien was set to expire on September 3, 2012, but was extended until August 11, 2020, because the Trustee received a payment on the original judgment on August 11, 2010.[5] There is no statutory provision or other law supporting the argument that a payment lawfully revives a judgment. This very issue was addressed in the recent case of *Unifund CCR Partners v. Abright*, 2018 WL 292571 (Mo. Ct. App. E.D. June 12, 2018). In *Unifund*, a default judgment was entered in favor of a bank and against Abright on June 28, 2005. Abright's employer subsequently withheld wages pursuant to the bank's request for garnishment. The first

---

[5] In reality, an order was entered on or about August 11, 2010, directing that all funds being held by the Court be paid to the Trustee.

payment by garnishment was made on January 4, 2006, and the last was made on July 31, 2007. On July 17, 2017, the bank moved to revive the judgment. The motion was denied as untimely filed, and this appeal followed. Relying on the language of §516.350.1, the bank claimed that it had ten years from the last payment date (July 31, 2007) to file its motion to revive the judgment. Accordingly, it argued, its motion was timely. The court rejected that argument: "Appellant misreads Section 516.350.1 because within it is a presumption an initial motion for revival of judgment has been filed within ten years of the original judgment in order to use a subsequent payment by the judgment debtor as a revival benchmark date." 2018 WL 292571, at *2. Since the bank filed its revival motion outside the prescribed ten-year period, it could not use a payment date as a benchmark. The court held further that Mo. R. Civ. P. 74.09(a) does not provide for a payment to be considered at all in the calculation of the revival timeframe. That rule states that a judgment may be revived by order of the court that entered it pursuant to a motion for revival filed within ten years after entry of the judgment or the last prior revival.

In addition, as the Trustee notes, because the order of revival was entered after the bankruptcy filing, it is void *ab initio* as a violation of the automatic stay under to §362(a)(4) which provides that a bankruptcy petition operates as a stay of "any act to create, perfect, or enforce any lien against property of the estate." *In re Vierkant*, 240 B.R. 317, 325 (8th Cir. BAP 1999)(actions taken in violation of the automatic stay are void ab initio). Hancock counters that the revival order is excepted from the automatic stay pursuant to §362(b)(3) which provides that the stay does not prohibit any act to perfect, maintain or extend the perfection of an interest in property. It argues that the exception applies because its motion to revive judgment was filed prior to the Debtor's petition date, and the revival order was simply entered in response to that motion. This Court disagrees. Section 363(b)(3) is not applicable under these facts; it would only apply if the rendition

8

of the revival order related back to a time prior to the bankruptcy filing. *In re Grede Foundries, Inc.*, 651 F.3d 786,791 (7th Cir. 2011)("The narrow purpose of this exception is to 'protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects' by allowing [creditors] to perfect an interest they obtained before the bankruptcy proceedings began.")(citations omitted). Here, since the Hancock Judgment lien expired before the petition date, the revival order cannot be considered an act to extend an otherwise valid lien.

Hancock also argues that the Trustee's challenge to its revival order violates the *Rooker-Feldman* doctrine. As the Trustee correctly points out, however, the revival order is not entitled to any preclusive effect, including the protection of the *Rooker-Feldman* doctrine, because it was entered when the automatic stay was in effect. Judicial proceedings in violation of the automatic stay are void *ab initio*, and a bankruptcy court is not obligated to extend full faith and credit to such judgments. *In re Gruntz*, 202 F.3d 1074, 1082 n.6 (9th Cir. 2000).

B.     Attachment of Liens

Under Missouri law, a "public utility" includes every water corporation and sewer corporation as those terms are defined in the relevant statute. Mo. Rev. Stat. §386.020. Pursuant to §386.020(49), a sewer corporation includes every entity that owns, operates or manages any system for the collection, treatment and disposal of sewage for gain. The term "sewer system" is broadly-defined under the statute, and includes plants and structures facilitating the collection, treatment and disposal of sewage. Mo. Rev. Stat. §386.020(50). Likewise, "water corporation" is broadly-defined, and includes every entity owning or managing a facility that sells or distributes water for gain. Mo. Rev. Stat. §386.020(59).

It is undisputed that the Debtor is a water corporation and a sewer corporation within the statutory definitions of those terms. Thus, the Debtor is a public utility. Operations engaged in

various similar endeavors have been held by Missouri courts to be public utilities and, therefore, quasi-public corporations. *See, e.g., Union Reddi-Mix Company v. Specialty Concrete Contractor*, 476 S.W.2d 160 (Mo. Ct. App. 1972)(analogizing waterworks property to other municipal properties used for a public purpose); *Redbird Engineering Sales, Inc., v. Bi-State Development Agency of Missouri-Illinois*, 806 S.W.2d 695 (Mo. Ct. App. 1991)(construction of a public transportation facility); *Collins & Herman, Inc. v. TM2 Const. Co., Inc.*, 263 S.W.3d 793 (Mo. Ct. App. 2008)(supplier of electric and gas utility services).

Plaintiff argues that the Debtor is not a quasi-public corporation as that term is defined under Missouri law, citing §610.010: "any person, corporation or partnership organized or authorized to do business in this state pursuant to Chapter 352, 353, or 355…." He contends that because the Debtor was not incorporated under these provisions, but was instead organized under Chapter 351 (general business corporation), it cannot be characterized as a quasi-public corporation. The Court rejects that argument because §610.010 is not relevant. As noted by the Trustee, that section defines a "quasi-public *governmental* body," an entirely different term that applies in an entirely different context. (Emphasis added.) Pursuant to the statutory definitions set forth above and relevant case law, the Debtor is a quasi-public corporation. It operates the Water Systems for the benefit of the public and uses them to serve the residents of Camden County.

Certain property of a county is, by statute, expressly exempt from attachment and execution, *e.g.,* courthouses, jails, clerks' offices. Mo. Rev. Stat. §513.455. It does not necessarily follow, however, that all property not expressly exempt by statute is subject to attachment and execution. *Security State Bank v. Dent County*, 137 S.W.2d 960, 961 (Mo. 1940). Missouri courts have recognized the general proposition that property held by a municipal corporation which is held in trust for the benefit of the public and used for public purposes is exempt from execution.

10

*Id. See also Union Reddi-Mix*, 476 S.W.2d at 162. They recognize that it is contrary to public policy to sell property owned by a municipal corporation on execution because selling or removing it may work irreparable injury to the county and ruin its inhabitants. *Union Reddi-Mix,* 476 S.W.2d at 162; *Security State Bank,* 137 S.W.2d at 963.

This rule has been extended to "quasi-public" corporations. In *Redbird*, for example, a supplier of steel products for use in the construction of a public transportation facility was not paid by the contractor. The supplier brought suit to impose a mechanics' lien on the property owned by the Bi-State Development Agency, "a body corporate and politic" that was authorized to "plan, construct, maintain, own and operate…terminal facilities." *Id*. at 698. The court began with the established principle that "a public building, lot or other public property owned by a traditional governmental body such as a state, county, city or school district and devoted to public use is not subject to a mechanics' lien." *Id.* Noting that the rationale for the exception from lien imposition was the same whether the property was held by a governmental entity or a quasi-public corporation, the court held that the exception barring the imposition of mechanics' liens on property of public corporations may also encompass that of quasi-public corporations. *Id.* In this case, the Bi-State agency project was designed to bring about improvements which were necessary to stop the decline in the use of mass transportation service. The court concluded that the agency was a quasi-public corporation whose project was "reasonably necessary for public use" and therefore, the supplier's mechanics' lien claim was properly dismissed. *Id.* at 699.

Courts have also uniformly held that mechanics liens, specifically, may not attach to municipal property used for public purposes. *Union Reddi-Mix,* 476 S.W.2d at 161. This rule has been extended to quasi-public corporations. *Redbird Engineering,* 806 S.W.2d at 697. As the court in *Redbird* explained: The underlying policy is to "keep intact the property belonging to and

11

essential in the operation of a public service corporation, so that its creditors may not seize and sell the same piecemeal, and by thus disabling it defeat the purpose for which it was created by rendering it unable to perform its duties to the public." *Id.* at 698 (citations omitted).

The Plaintiff claims that judgment liens should be treated differently than mechanics' liens in this regard. As the Trustee notes, there is no justification for drawing a distinction in this context. The foundation of the rule is to protect a public utility's property and is derived from the law on the immunity of property to attachment and execution generally. *Union Reddi-Mix,* 476 S.W.2d at 161. Thus, is seems unlikely that Missouri courts would favor judgment lienholders over mechanics' lien holders.

The Plaintiff also claims that the applicability of judgment liens to sale proceeds in a bankruptcy context is a separate issue from a creditor's right to execution in state court, and that the Trustee incorrectly conflates these concepts. Again, case law does not support that argument. Numerous courts have held that public property owned by a municipality for a public purpose is not *subject to* mechanic's liens as it is against public policy. *See, e.g., Union Reddi-Mix,* 476 S.W.2d at 161 ("The courts are practically unanimous in holding that absent a specific statute, a mechanic's lien does not attach to buildings and property owned by a municipality and used for the benefit of the pubic."); *Redbird Engineering*, 806 S.W. 2d at 698 ("...the general rule is that the property of a quasi-public corporation which is affected with a public use is not subject to a mechanics' lien."); *Collins & Hermann*, 263 S.W.3d at 799 (supporting trial court's finding that quasi-public corporation was not subject to a mechanic's lien). Moreover, as the Trustee notes, under §511.350, a judgment is a lien on real estate held by the debtor in the county in which the judgment is rendered. The term "real estate" for purposes of Chapter 511 is defined as "all estate and interests in lands, tenements and hereditaments liable to be sold upon execution." Mo. Rev.

Stat. §511.010. Thus, even if the property would only be immune from execution and not attachment according to common law principles, the property would be immune from attachment by statute, as it would not be real estate to which a judgment lien could attach. *See Smith v. Thompson*, 69 S.W. 1040, 1042 (Mo. 1902)(lien did not attach to homestead since it was exempt from execution).

The only authority cited by the Plaintiff on this issue of attachment and execution is *In re West Service Corp.*, 225 B.R. 537 (Bankr. D. Conn. 1998), and *West* is not relevant. In the first place, a Connecticut case is not binding on this Court. In addition, while the Plaintiff states that the Connecticut statutes are "remarkably similar" to the Missouri statutes, there are significant differences, particularly the fact that Connecticut law does permit the attachment of judgment liens to a utility's property. Conn. Gen. Stat. §52-380b; *West*, 225 B.R. at 541. This is in stark contrast to the policy underlying Missouri's law, *i.e.*, to protect the comfort, health, safety and property of citizens when the property is used for a public purpose. *Union Reddi-Mix*, 476 S.W. 2d at 161. Finally, even the issue in *West* is not the same as the issue before this Court. The court there described the issue as being "whether Connecticut statutes mandate the prior approval of the Connecticut Department of Public Utility Control and/or the Connecticut Department of Public Health before a judgment creditor of a regulated Connecticut water company may record and file judgment liens against the real and personal property of the water company." *West,* 225 B.R. at 537-38.

C.   Reexamination of Williams Judgment

The Williams Judgment arose from a quite title action that the Debtor brought in state court against Williams and several other defendants. Williams filed a counterclaim against the Debtor to collect attorney's fees purportedly owed to him. The PSC intervened, claiming that the legal

13

fees were unfair and unreasonable. The parties engaged in discovery, and the lawsuit proceeded to trial. The trial judge entered judgment in favor of Williams for $500,000.

Mitchell argues that Williams obtained a judgment without the benefit of "hotly" contested litigation since neither Hancock nor Mitchell testified at the state court trial to determine the validity of Williams' legal fees. He also asserts that only $100,000 of the $500,000 awarded were proper attorney's fees, the remainder attributed to Williams' non-legal duties or unauthorized activities. Mitchell claims that these facts require a review of the state court judgment. He relies upon a Missouri statute that provides for review of certain judgments, citing Mo. Rev. Stat. §511.190. That section provides that a judgment will stand if a petition for review is not filed within three years after the final judgment is rendered. However, Mitchell has completely ignored the context of this statutory provision. As Williams notes, and Mitchell fails to refute, Section 511.190 must be read in conjunction with other referenced provisions that refer to the use of a petition for review to set aside an interlocutory judgment that was rendered by default. *See* Mo. Rev. Stat. §§ 511.170 and 511.130. Therefore, §511.190, upon which Mitchell relies, is inapplicable under these facts because this is not a default situation and Mitchell was not a party to the trial that resulted in the Williams Judgment.

Williams asserts that the Full Faith and Credit Act bars review of his judgment. Mitchell makes no mention of the full faith and credit argument in his response. Pursuant to 28 U.S.C. §1738, state court judgments are entitled to full faith and credit in federal court. A two-step process is followed in making that determination: 1) examine the law of the state in which the decision was rendered to determine whether the state's law would afford full faith and credit to the judgment, and if so, 2) decide whether a recognized exception exists which would deny full faith

14

and credit to the state court judgment. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985).

In terms of the first prong, it is well-settled that Missouri law does not permit collateral attacks on final judgments. *See, e.g., Barry, Inc. v. Falk*, 217 S.W.2d 317 (Mo. Ct. App. W.D. 2007); *Bugg v. Rutter*, 466 S.W.3d 596 (Mo. Ct. App. W.D. 2015). In general, a judgment may only be attacked by direct appeal. *Bugg,* 466 S.W.3d at 602. This ensures the certainty and finality of judgments. *Id.*

The Williams Judgment became final thirty days after it was entered pursuant to Mo. R. Civ. P. 75.01. At that point, any aggrieved party had ten days to appeal it. Mo. R. Civ. P. 84.01(a). No appeal was filed. Since direct appeal is the only way to attack a judgment under Missouri law, the first prong of the full faith and credit test is satisfied.

With respect to the second prong, Mitchell fails to identify any applicable exception that would deny full faith and credit to the Williams Judgment because none exists. This Court agrees with Williams' assessment that the notion that an individual who was not a party to the underlying state court case can subsequently have a bankruptcy court substitute its judgment for that of the state court and review its holding makes no sense. Accordingly, the Williams Judgment is entitled to full faith and credit.

Additionally, Mitchell argues that he was a necessary party to the state court litigation, and because he was not given notice of it, he was deprived of his constitutional rights under the Fourteenth Amendment. He fails, however, to offer any authority in support of his contention that he was a necessary party. Instead, Mitchell comments on the substantive basis for arguing that Williams' Judgment was improper, making sweeping allegations of "deception," "substantial

discrepancy," and "misleading information" regarding the legal fees awarded. He makes no showing that he was a necessary party with rights of which he was deprived.

## V. CONCLUSION

For the reasons stated above, the Trustee's Summary Judgment Motion as to Count I of her cross-claim is granted. The Debtor is a quasi-public corporation as that term is defined within Missouri's statutory framework, and as such, the Water Systems are protected from the attachment and execution of nonconsensual liens. Even if it were not characterized as a quasi-public corporation, the Trustee has demonstrated that the liens of the Judgment Holders expired prepetition. Regarding the Hancock Judgment, the revival order was void *ab initio* as it was entered in violation of the automatic stay. Furthermore, there is no authority for the proposition that payment on the judgment revives or extends it.

In addition, Williams' Summary Judgment Motion is granted. It is well-established that state court judgments are entitled to full faith and credit in federal court. Mitchell has failed to persuade this Court that an exception exists that would deny the Williams Judgment of that. Furthermore, Mitchell presented nothing to support his contention that he was a necessary party to the underlying lawsuit and was deprived of his constitutional rights. In short, he has presented no authority for the Court to review the Williams Judgment.

Date: September 12, 2018                    */s/Dennis R. Dow*
                                            THE HONORABLE DENNIS R. DOW
                                            UNITED STATES BANKRUPTCY JUDGE